UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>VITRO ASSET CORP., et al.,<br><br>　　　　Debtors<br>―――――――――――――――<br>UNITED INDEPENDENT SCHOOL DISTRICT,<br><br>　　　　Appellant,<br><br>　　V.<br><br>VITRO ASSET CORP., and its AFFILIATED DEBTORS ,<br><br>　　　　Appellees. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO:<br>3:15-CV-0236-B |

MEMORANDUM OPINION & ORDER

United Independent School District (UISD) appeals the bankruptcy court's *Order Granting Reorganized Debtor's Motion Pursuant to 11 U.S.C. §§ 105 and 524 to Enforce the Order Confirming the First Amended Joint Chapter 11 Plan for Reorganization* and its *Order Denying the Motion to Alter or Amend Judgment and Motion for Reconsideration.* Vitro Asset Corp. (Vitro Asset) and its affiliated debtors (together Vitro Appellees), including subsidiary Vitro Packaging, LLC (Vitro Packaging),

-1-

respond. Having reviewed the orders, this Court **AFFIRMS** for the following reasons.[1]

## I.

## BACKGROUND

**A.** *The Vitro Asset Bankruptcy*

This is a tax collection suit. UISD is a taxing authority and secured creditor. Its tax claims are for ad valorem property taxes, penalties, interest, and collection fees. They are secured by statutory lien and attached to Vitro Packaging's personal property. *See* Tex. Tax Code Ann. § 32.01 (West 2000). These claims comprise part of a larger Chapter 11 reorganization involving parent company Vitro Asset, which began in 2010 and closed in 2014. R. 840, 1577. The bankruptcy court discharged UISD's claims and statutory lien, enjoined its collection efforts, and denied reconsideration of the judgment. R. 5–10. UISD appeals. R. 1–4.

In 2012, UISD delivered two tax bills to Vitro Packaging totaling $464,709.97 due on January 31, 2013 (the base taxes). Appellant's Br. 5. On April 4th, 2013, Vitro Asset and its affiliated debtors filed a motion seeking authorization to pay certain taxes. R. 431. The next day, UISD filed a proof of claim with supporting documentation for $598,360.56 against Vitro Asset—$464,709.97 in base taxes and $133,650.59 in tax penalties, interest, and collection fees (the disputed fees). R. 426–30 (original proof of claim). After the bankruptcy court authorized payment, Vitro Packaging paid UISD $464,709.97, and has made no other payments. R. 809.

Then, UISD amended its proof of claim and attached supporting documentation. R. 463–69

---

[1] Because review of the second order turns on the correctness of the first, and because the Court affirms the first order, the Court will address both orders together. The Court finds no error in the bankruptcy court's second order and **AFFIRMS** for the reasons listed in the original order and this opinion.

(amended proof of claim). The record does not clearly explain the purpose of the amendment. In the hearing before the bankruptcy court, UISD stated that it was because it had filed the original proof of claim in the wrong case. R. 1631 (Hearing Transcript). Vitro Appellee's, in turn, stated that the amendment came as a result of a conversation between counsel identifying issues with the claim amount and which case UISD filed it against. R. 1628. In effect, there is no difference. Either way, the end result is the amended proof of claim.

UISD made five material changes: (1) UISD amended the name of the debtor from Vitro Asset to Vitro Packaging; (2) it amended the amount of the secured claim from $598,360.56 to $464,709.97; (3) it altered the supporting documentation to reflect this change by striking out previously listed penalties, interest, and fees; (4) it attached additional supporting documentation listing unpaid base taxes and previously accrued penalties, interest, and fees; and (5) it added the language, "United Independent School District is an oversecured creditor and therefore, interest, penalties, court costs, expenses and attorney's fees under the Texas Tax Code continue to accrue and are to be added to this claim. 11 USC § 506(b) [sic]." *Id.* UISD insisted this last amendment "affirmatively seeks those . . . post petition arrears." R. 1632.

**B.**     *The Confirmed Plan*

Soon after, Vitro Asset and its affiliated debtors filed their First Amended Joint Chapter 11 Plan of Reorganization (the plan), R. 582, which the bankruptcy court confirmed (the confirmed plan). R. 559.[2] The confirmed plan categorized UISD's post-petition claims as Class 2: allowed secured claims. R. 599–600 (Section 4.2). At issue in this case is section 3.5.

---

[2] UISD received notice of all pleadings and orders, specifically including the proposed plan, plan confirmation, and plan Effective Date. R. 1159–67, 1554–55, 1566.

Section 3.5 sets forth requirements and deadlines for recovering Class 2 claims for post-petition interest, reimbursement, and other charges:

> Any holder of an Allowed Claim, other than an Unsecured Claim, seeking payment of either postpetition interest or reimbursement of attorney's fees and other costs associated with such claimant's Allowed Claim shall file with the Bankruptcy Court (and serve on the Debtors and the Office of the United States Trustee) a request seeking such relief within 30 day after the Effective Date [of December 19, 2013]. Any such request must include all of the documentation upon which the claimant relies to establish such claimed entitlement. THE INCLUSION OF THE ENTITLEMENT TO THESE TYPES OF CLAIM [sic] IN PROOFS OF CLAIM SHALL NOT BE SUFFICIENT TO ESTABLISH SUCH CLAIMS. The Reorganized Debtors shall have 60 days after the Effective Date to resolve any such request without the need for the Bankruptcy Court's approval and shall file notice with the Bankruptcy Court when the matter is resolved; provided, however, that if the matter has not been resolved within the foregoing 60 day period, it shall resolved by the Bankruptcy Court.

R. 598–99 (emphasis in original). UISD did not object to or appeal the confirmed plan. Additionally, UISD took no action to request or collect any post-petition claims during the thirty days after the Effective Date. On February 21, 2014, the bankruptcy court entered its Final Decree Closing Chapter 11 Cases. R. 1577. On June 5, 2014, UISD resumed collection attempts. R. 658–63.

C.    *The Instant Case*

To address these collection attempts, the bankruptcy court reopened the underlying Chapter 11 bankruptcy. Vitro Asset and its affiliated debtors filed a Motion to Enforce the order confirming the plan, which the bankruptcy court granted, holding: (1) UISD failed to preserve any claim to the disputed fees under section 3.5 of the confirmed plan, and was consequently not entitled to payment of any of the disputed fees; (2) Vitro Packaging's $464,709.97 payment constituted full satisfaction

of UISD's allowed claim for the base taxes;[3] (3) full satisfaction of the base taxes claim resulted in release, termination, and extinguishment of any associated property liens; and (4) UISD was enjoined from continuing to attempt to collect the disputed fees. R. 693, 6–7. UISD filed a Motion for Reconsideration, which the bankruptcy court denied. R. 8. UISD appeals from both orders. R. 1–4.

## II.

## LEGAL STANDARD

### A.    *Order Granting Motion to Enforce*

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court. 28 U.S.C. § 158(a) (2012). Because the district court functions as an appellate court, it applies the same standard of review federal appellate courts use when reviewing district court decisions. *Webb v. Reserve Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103–04 (5th Cir. 1992). The Court reviews the bankruptcy court's findings of fact for clear error and its questions of law, or mixed questions of law and fact, *de novo*. *McLain v. Newhouse (In re McLain)*, 516 F.3d 301, 307 (5th Cir. 2008); *Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 542 F.3d 131, 135 (5th Cir. 2008). Further, the Court may affirm on any supported grounds, regardless of whether the bankruptcy court relied on those grounds. *See Bickford v. Int'l Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir. 1981).

### B.    *Denial of Motion to Alter or Amend and Motion for Reconsideration*

Denial of a motion to alter or amend or a motion for reconsideration filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure is generally reviewed for abuse of discretion. *See*

---

[3] The bankruptcy court listed Vitro Packaging's payment for $464,321.64. R. 6. This appears to be a small clerical error. *See* R. 1640 (the bankruptcy court entered an order provided by Vitro Asset's counsel). The record reflects that the payment amount was actually for $464,709.97 and this Court reviews this appeal as though the bankruptcy court's order listed the correct amount. R. 809.

*Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 247 (5th Cir. 2006) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). Unless the bankruptcy court clearly abused its discretion in determining whether movant "established a manifest error of law or fact nor presented newly discovered evidence, the [bankruptcy] court's ruling should not be disturbed." *Id.*

## III.

## ANALYSIS

Before reaching the merits, the Court must clarify the issues before it. UISD raises three issues on appeal. First, UISD seeks review of whether, as a taxing authority with an unimpaired security interest, res judicata can bar its collection efforts by claim or lien. Appellant's Br. 2.[4] Second, UISD argues that section 3.5 does not eliminate its claims or lien. *Id.* Third, UISD contends that the confirmed plan violates 11 U.S.C. § 502. *Id.* Because the first two grounds are dispositive of this appeal, the Court does not reach the third issue.

UISD's first two issues address: (1) the interpretation of section 3.5, and (2) the application of section 3.5. The first issue, as UISD frames it, addresses whether the bankruptcy court's interpretation of section 3.5 impermissibly impairs its claims, creating an irreconcilable conflict with other sections of the confirmed plan, the bankruptcy court's confirmation order, and bankruptcy law. Its proposed interpretation of the confirmed plan would be to omit section 3.5 from the plan for purposes of this case. Vitro Appellees correctly reframe the issue as a res judicata question. (Appellees' Br. at 2).

---

[4] The parties disagree on how to frame this issue. Appellant states the issue as one of status, Appellant's Br. 2 (UISD is "an official and secured taxing authority creditor"), whereas Appellee counter-states the issue as one of res judicata. Appellees' Br. 2.

> Regardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed. [Creditor], in effect, is now seeking to appeal the confirmed Plan and asking us to review it on its merits. Questions of the propriety or legality of the bankruptcy court confirmation order are indeed properly addressable on direct appeal. [Creditor], however, is now foreclosed from that avenue of review because it chose not to pursue it. The issue before us in this appeal is the application, not the interpretation, of the Plan.

*Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987).

At no point did UISD object to or appeal the confirmed plan; specifically, it never objected that the confirmed plan impaired its claims in any way. *See* R. 1635. Any objection now as to interpretation or impairment is foreclosed. Rather than interpret section 3.5, the Court must determine whether it applies to UISD's claims and lien, whether the confirmed plan as a whole should have res judicata effect, and whether all elements of res judicata are present. The Court addresses each in order.

## A.    *Application of Section 3.5*

Section 3.5 sets forth requirements and deadlines for recovering Class 2 claims for post-petition interest, reimbursement, and other charges. Application of section 3.5 turns on its language. It reads straightforwardly. It applies to "[a]ny holder of an Allowed Claim, other than an Unsecured Claim, seeking payment of either postpetition interest or reimbursement of attorney's fees and other costs associated with such claimant's Allowed Claim [3.5 claims]." R. 598–99.

Determining whether UISD's claims are 3.5 claims is important because if they are, the confirmed plan discharged them. The plan provides a thirty-day window of opportunity to request relief for 3.5 claims. *Id.* When this window closes, it bars other requests for relief and essentially discharges them. *See id.*

UISD's position is that its claims for base taxes, penalties, and collection fees are not 3.5 claims. Vitro Appellees' position is that UISD did not request relief under section 3.5, so the plan bars and discharges any of its claims that are 3.5 claims. For clarity, UISD has two sets of claims: one for the base taxes, and one for any penalties, interest, and fees (other tax fees). It argues that the Texas Tax Code allows it to apply payments pro rata, splitting them among the base taxes and other tax fees. And this is exactly how UISD says it applied Vitro Packaging's tax payment. This kind of application would leave Vitro Packaging with an outstanding balance owed for base taxes of $103,798.22 plus additional other tax fees. Vitro Appellees respond that the amended proof of claim is binding and that it ensures that its tax payment is applied to the base taxes, not divided pro rata. This kind of application would result in payment in full for UISD's base taxes claim, leaving only its claim for other tax fees, which Vitro Appellees argue are discharged 3.5 claims

### 1.   Base Taxes

Section 3.5 does not apply to base taxes and cannot be used to discharge them. In that sense, UISD is correct in its assertion that its claim for base taxes is not a 3.5 claim. Vitro Appellees, however, assert that Vitro Packaging's delinquent tax payment applied to the base taxes, discharging them, leaving behind only the disputed fees. It then seeks to have claims for disputed fees discharged through section 3.5.

At the time UISD received Vitro Packaging's tax payment, its proof of claim listed base taxes as well as tax penalties, interest, and fees. Following payment, it amended its proof of claim, listed only the base taxes for $464,709.97 (the amount of the tax payment), and specifically omitted the disputed fees. UISD contends that the amended proof of claim was not timely and should not be binding. Vitro Appellees contend that the amended proof of claim is binding. Either approach ends

in the same result.

In the Fifth Circuit, a proof of claim may not contain post-petition claims. *In re Jack Kline Co., Inc.*, 440 B.R. 712, 732 (Bankr. S.D. Tex. 2010); *see also* Official Bankruptcy Form 10 ("Amount of Claim as of Date Case Filed"). This means UISD's first proof of claim improperly listed the disputed fees, and proper payment under that proof of claim would satisfy the overdue base taxes for purposes of the bankruptcy.

That being said, UISD's amended proof of claim is binding. Filing a proof of claim is tantamount to filing a civil complaint. *See Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir. 1985) (citing *Nortex Trading Corp. v. Newfield*, 311 F.2d 163, 164 (2d Cir. 1962)). And just as an amended pleading binds a plaintiff, *see, e.g., Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985), an amended proof of claim binds a creditor. *See United States v. Colvin (In re Affiliated Food Stores, Inc.)*, 222 B.R. 799, 800 (N.D. Tex. 1998); *In re Nat'l Gypsum Co.*, 139 B.R. 397, 412 (N.D. Tex. 1992) ("[A]ny claim not asserted in the Proof of Claim is barred"); *see also* 11 *Collier on Bankruptcy* ¶ 5.03[3] (16th ed. 2011). It is not enough, as UISD argues, that the amended proof of claim came late. "Generally, a creditor may freely amend its proof of claim" before objection, and it is within the discretion of the bankruptcy court whether to allow such amendments. *In re Gilbreath*, 395 B.R. 356, 365 (Bankr. S.D. Tex. 2008), *as amended* (Nov. 19, 2008). Thus, Vitro Packaging's tax payment applied to its overdue base taxes. This means UISD's claim for base taxes has been paid in full, and only possible claims for other tax fees remain.

### 2.   Disputed Fees

Now the Court must determine whether UISD's claim for disputed fees—the remaining penalties, interest, and fees—is a 3.5 claim.

*i.      Post-petition interest*

UISD does not dispute that section 3.5 governs interest. Interest clearly falls under the language "postpetition interest."

*ii.     Tax penalties*

UISD, however, does dispute that section 3.5 governs tax penalties, contending that penalties do not constitute "interest" or "reimbursement." On both of its proofs of claim it attached supporting documentation that listed penalties and interest together. These penalties should be construed as interest. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 254 (1989) ("The allowance of interest on nonconsensual liens is akin to a penalty on the debtor for the nonpayment of taxes.").

*iii.    Collection fees*

UISD also disputes that section 3.5 governs collection. Section 3.5 not only includes interest and reimbursement, but also includes "other costs associated" with the Allowed Claim. Collection fees are the fees charged for the additional expense of collection attempts of an underlying fee. These additional expenses are directly associated with the underlying fee. Thus, they constitute "other costs associated." Therefore, section 3.5 applies to all aspects of UISD's claim for the disputed fees, discharging them. This leaves only the underlying statutory lien.

## 3.      Statutory Lien

Section 3.5 applies only to claims, not liens. R. 598–99. Vitro Appellees argue because Vitro Packaging paid the owed base taxes in full, UISD's claim for base taxes is discharged; that because its claim disputed fees is a barred 3.5 claim, it is discharged; and because all of UISD's claims are discharged, the underlying lien must be discharged too. Vitro Appellees correctly point out that a lien does not survive bankruptcy if the plan provides for the underlying debt and the debtor pays the

debt in full; however, absent payment in full, a secured creditor's lien is not so clearly discharged. *See In re Kleibrink*, No. 3:07-CV-0088-K, 2007 WL 2438359, at *5 (N.D. Tex. Aug. 28, 2007), *aff'd*, 621 F.3d 370 (5th Cir. 2010) (citing *In re Allen*, 122 Fed. App'x. 96, 97 (5th Cir. 2004)). Once again, it is important to understand the division of claims and liens in this case. As stated above, UISD has two claims: one for the base taxes, and another for the disputed post-petition penalties, interest, and fees. Then, aside from the claims, there is the underlying statutory lien that secures both claims. The first claim is paid in full, but the second claim is not; therefore, the first claim is discharged, but the second claim is not. Because both claims are not discharged, the lien is not discharged; rather, the lien can only be discharged by the confirmed plan through res judicata. For this to happen, the Court must make two determinations. First, it must determine whether to give the plan res judicata effect as to the 3.5 claims and UISD's statutory lien. Second, it must determine whether this case meets the four elements of res judicata.

**B.      *The Res Judicata Effect of the Confirmed Plan***

The doctrine of res judicata bars claims that either have been litigated or could and should have been raised in an earlier suit. *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). This includes bankruptcy suits, *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987), and, particular to this case, "bankruptcy plan confirmations." *Sun Finance Co. v. Howard (In re Howard)*, 972 F.2d 639, 641 (5th Cir. 1992).

Generally, a confirmed plan has res judicata effect for claims. *Id.* This provides finality for debtors. *Id.* This finality, however, has the potential to interfere with the rights of secured creditors. *Id.* To protect them, a limited exception exists to allow secured creditors to remain outside of the bankruptcy proceeding and rely solely on their liens. *Id.* ("A secured creditor 'with a loan secured by

a lien on the assets of a debtor who becomes bankrupt before the loan is repaid may ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt.'" (quoting *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 556 (5th Cir. 1985))).[5] Under this rule (the *Simmons* rule), a confirmed plan's discharge of a secured creditor's claims has no real teeth. Despite any discharge, the creditor may pursue its claims through its lien. Thus, the question is not just whether res judicata allows for claim discharges under the plan, but also whether it allows for lien discharges as well.

*Simmons* provides two circumstances where a plan can discharge both claims and lien: (1) the filing of an objection, and (2) invalidation by some provision of the Bankruptcy Code. *Howard*, 972 F.2d at 642; *Simmons*, 765 F.2d at 556. UISD envisions that as a secured creditor it "may ride through a bankruptcy case unaffected by language in a plan of reorganization to the contrary, lacking active participation in the case." Appellant's Br. 19 (citing *Acceptance Loan Co., Inc. v. White Transp., Inc.*, 725 F.3d 494, 496 (5th Cir. 2013)). Vitro Appellees respond that failure to object to or appeal the confirmed plan serves as grounds for res judicata concerning all matters covered by the confirmation order (claims and liens). Appellees' Br. 13 (citing *Shoaf*, 815 F.2d at 1054). Neither party, however, fully briefed these exceptions.

1.   **Filing of an Objection**

Filing an objection puts a creditor on notice that its lien is at risk unless it participates in the confirmation proceedings. *Howard*, 972 F.2d at 642. Otherwise, a debtor might obtain an unjustified windfall simply by omitting a secured creditor from the plan confirmation proceedings and binding

---

[5] This is a well-established default rule of bankruptcy law. For discussion, *see Simmons* 765 F.2d at 556 & n.11 (tracing the rule back to *Long v. Bullard*, 117 U.S. 617, 620–21 (1886)); *see also In re Tarnow*, 749 F.2d 464, 465 (7th Cir. 1984) (collecting cases).

them with the language of the plan. *See Simmons*, 765 F.2d at 556. Generally, under *Simmons*, a secured creditor's claims should pass through the bankruptcy uncontested, secured by the creditor's lien. *Id.* This aligns with the Bankruptcy Code. Under section 506(d), a creditor need not file a proof of claim to maintain its lien, and under section 502(a), a proof of claim is deemed allowed unless a party in interest objects. Hence, an objection requirement. The whole gist is that an objection creates a contested matter, and a contested matter prompts participation. *Howard*, 972 F.2d at 642. Failure to participate, then, warrants res judicata. *Id.* Here, Vitro Asset and its affiliated debtors made no objections to UISD's proofs of claim. Vitro Appellees argue that the Amended Claim removed any reason to object. Appellees' Br. 21. Because the Court rules on an alternate ground, it will not reach this argument.

## 2. Invalidation by Some Provision of the Bankruptcy Code

The second alternative is invalidation by some provision of the Bankruptcy Code. *See, e.g., White*, 725 F.3d at 496–98 (addressing secured creditors). In *White*, as in this case, 11 U.S.C. § 1141 applies. Section 1141 describes the effect of confirmation:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

> (c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan–

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not–

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan . . . .

11 U.S.C. § 1141 (2012) (emphasis added).[6] Section 1141(c) deals with "claims and interests," which, in the Fifth Circuit, includes liens. *In re Ahern Enterprises*, 507 F.3d 817, 822 (5th Cir. 2007) ("[T]he confirmation of a Chapter 11 plan voids liens on property dealt with by the plan unless they are specifically preserved, if the lien holder participates in the reorganization."). 1141(c) discharge requires: "(1) the plan must be confirmed; (2) the property that is subject to the lien must be dealt with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien." *Id.* In applying 1141(c) to claims, the four elements are essentially the same; the confirmed plan must deal with and not preserve the claims, and there must be creditor participation. *See generally id.* Here, the plan is confirmed and does not preserve UISD's remaining

---

[6] Section 1141 cannot discharge tax penalties that are excepted from discharge under section 523. *IRS v. Taylor (In re Taylor)*, 132 F.3d 256, 261 (5th Cir. 1998) (citing 11 U.S.C. §§ 1141(d)(2), 523, 507(a)(8)). To be excepted from discharge under section 523, the tax must be of the kind and for periods specified in section 507(a)(3) or 507(a)(8). *Id.* Section 507(a)(8)(B) deals directly with property taxes. To qualify under section 507(a)(8)(B) the tax must meet three criteria: (1) it must be a property tax, (2) it must have been incurred prior to commencement of the case, and (3) it must have been last payable without penalty after one year prior to commencement of the case. Here, Vitro Packaging incurred the taxes in 2012, clearly before the commencement of the case in 2010. Additionally, 507(a)(8) applies to "allowed unsecured claims of governmental units." All claims in this case are secured claims. Thus, section 523 does not except UISD's tax claims from discharge under section 1141.

claim or lien. Confirmed plan section 3.5 deals with UISD's claim, addressed above. At issue is whether the confirmed plan addresses UISD's property tax lien and whether UISD's conduct constitutes participation.

i.      *"Dealt with"*

The Fifth Circuit has not defined the phrase "dealt with," but the *Ahern* court provided a bright-line example. The court discussed a Fourth Circuit case in which the plan directly addressed certain property, a "$5 million settlement fund," to which the creditor sought to attach its lien. *Id.* (citing *Universal Suppliers, Inc. v. Reg'l Bldg. Sys., Inc. (In re Reg'l Bldg. Sys., Inc.)*, 254 F.3d 528, 530 (4th Cir. 2001)). But the Fifth Circuit has not set a minimum threshold for when it considers a lien to be "dealt with." Other circuits have allowed for general reference to suffice. *See, e.g., Concord v. N. New England Tel. Operations LLC (In re N. New England Tel. Operations LLC)*, 795 F.3d 343, 349 (2d Cir. 2015) (absent specific references, a general reference to "all property" categorically includes the disputed property); *Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.)*, 519 F.3d 640, 649 (7th Cir. 2008) (property is "dealt with" when there is "some evidence that the powers to affect the creditor's interest contained in the bankruptcy code . . . have in some way been exercised-whether expressly or impliedly"). And the Code envisions this general reference. Section 1141(b) empowers a confirmed plan to vest "all of the property of the estate in the debtor." *See also* 8 *Collier on Bankruptcy* ¶ 1141.04[1].

General reference aligns with section 1141(b) and indicates to creditors that their rights might be affected. Thus, this Court finds that vesting of property under section 1141(b) constitutes "dealing with" the property, absent specific references to certain property or preservation by the plan. Here, the confirmed plan deals with UISD's post-petition claims in section 3.5, addressed above, and

UISD's tax lien in section 10.2, Vesting of Assets. R. 598–99, 613. Section 10.2 purports to vest the property of each Estate under the authority of sections 1141(b) and (c). R. 613. This reference to property is general and all inclusive. Further, it evidences the plan's power to affect UISD's interest pursuant to the Code. The plan makes no specific references to this or other property, and does not preserve of this property or the related lien. Therefore, the confirmed plan "dealt with" UISD's claim and lien.

          *ii.*     *Participation*

What constitutes participation is also not entirely clear. "Participation" as an element of 1141(c) is a judicial gloss. *Ahern*, 507 F.3d at 823 (citing *In re Penrod*, 50 F.3d 459, 462 (7th Cir. 1995); *FDIC v. Union Entities (In re Be-Mac Transp. Co., Inc.)*, 83 F.3d 1020, 1027 (8th Cir. 1996)). Generally, courts append a participation requirement to section 1141(c) to ensure creditors have notice of the plan and its potential effect. *Id.* (same). This purpose informs the Court's understanding of what should constitute participation. The Fifth Circuit established the participation requirement in *Ahern* and held that "[i]n the instant case, it is a sufficient level of participation that [the creditor] filed a proof of claim as an unsecured priority creditor." *Id.* at 823. It has only addressed participation in two other cases. In *White*, the court provided some clarity, linking participation to activity, differentiating it from nonfeasance, the decision not to act, or failure to act. 725 F.3d at 497. From there, the court held that *Ahern* required "more than mere passive receipt of effective notice," *Id.* at 498. In the second case, the court stated in a special concurring opinion, that, "[generally], a secured creditor finds it necessary to participate by filing a proof of claim and then negotiating with the debtor or attempting to foreclose its lien." *Baker Hughes Oilfield Operations, Inc. v. Morton (In re R.L. Adkins Corp.)*, 784 F.3d 978, 981 (5th Cir. 2015) (Jones, J., specially concurring).

-16-

UISD disputes that it participated in the reorganization, claiming its "participation was minimal if at all; filing a proof of claim in the wrong case, and another one after the deadline for doing so." Appellant's Br. 19. In response, Vitro Asset and its affiliated debtors point out that UISD filed two proofs of claim, which satisfies *Ahern*. Appellees' Br. 15.

In this case, UISD received notice of the plan and the confirmation order. But UISD may not have been aware of the plan's potential effects. *See White*, 725 F.3d at 498 (mere passive receipt of effective notice insufficient). UISD's claim for the Disputed Fees was a Class 2 claim. Under the confirmed plan, Class 2 claims were considered unimpaired: "The legal, equitable and contractual rights of the holders of Class 2 Claims are unaltered by this Plan." R. 599; *see also* 11 U.S.C. § 1124 (2012). Because of their unimpaired status, the plan conclusively presumed Class 2 claim holders accepted the plan and thus did not solicit their votes. R. 600. For this reason, UISD participation was limited. "As a creditor, UISD monitored the progress of the case and awaited the confirmation of the plan." R. at 1600. It did not object or appeal to the confirmed plan, but it also only passively accepted it.

Here, UISD's participation turns on the fact that it filed multiple proofs of claim. In *Ahern*, filing a single proof of claim was sufficient to constitute participation on the part of an unsecured creditor. *White* guides this Court to look for activity and filing two proofs of claim connotes a decision to act. It does not matter that the first proof of claim addressed the wrong case and that the second came after the filing deadline. Errors on UISD's part do not stop multiple filings from constituting participation. As for whether these proofs of claim represent participation as to the base taxes only, and not the disputed fees, the amended proof of claim clearly attempts to preserve UISD's rights. UISD added a clause reserving its rights and attached additional supporting documentation that

"affirmatively seeks those . . . post petition arrears." R. 1632. While this is improper under Fifth Circuit case law, other circuits find it sufficient; either way, it is participation.[7] Therefore, this Court finds UISD's conduct sufficient to constitute participation under *Ahern*.

      *iii.*    *Conclusion*

The confirmed plan addresses UISD's claim and lien, and UISD participated in reorganization proceedings. As a result, section 1141 discharges both and forms a basis to bypass the default rule that a secured creditor may ignore the bankruptcy proceeding and instead rely upon its lien. Thus, the general rule that a confirmed plan has res judicata effect applies. The Court must now determine whether all elements of res judicata are present.

**B.**    ***All Res Judicata Elements Met***[8]

For res judicata to take effect, four elements must be present: "[1] the parties must be identical in both suits, [2] the prior judgment must have been rendered by a court of competent jurisdiction, [3] there must have been a final judgment on the merits and [4] the same cause of action must be involved in both cases." *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc) (quoting *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979).

    **1.**    **Identity of the Parties**

---

[7] *Compare In re Jack Kline Co., Inc.*, 440 B.R. at 732 ("A proof of claim may include only pre-petition claims."), *with Fawcett v. United States (In re Fawcett)*, 758 F.2d 588, 590 (11th Cir. 1985) ("We hold that the government's statement in its proof of claim that: '[f]or the purposes of section 506(b) of the Bankruptcy Code, post-petition interest may be payable' is sufficient notice to the debtor that the government was asserting a claim for post-petition interest.").

[8] UISD did not dispute that the case met all four res judicata elements; rather, it focused its argument on applying the *Simmons* rule that a secured creditor may ignore the bankruptcy and rely upon its lien. Appellant's Reply 6–9.

To meet this res judicata element, parties do not need to be the "formal" or "paper" parties. *Shoaf*, 815 F.3d at 1051. It is sufficient that the parties were "persons whose interests [were] properly placed before the court by someone with standing to represent them." *Id.* (quoting *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869. In *Shoaf*, it was enough that the parties participated in the proceedings as creditors and became parties for res judicata purposes even though neither was ever formally named. *Id.* In this case, Vitro Asset and its affiliated debtors were formal parties and UISD sufficiently participated and represented its interests before the bankruptcy court. Thus, the two satisfy the identical parties element.

**2.   Prior Judgment by a Court of Competent Jurisdiction**

A court has the authority to determine its own jurisdiction over the parties and subject matter. *Id.* (citing *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938)). Absent an allegation of fraud in obtaining the judgment, the court making the res judicata determination should not question the competent jurisdiction of the original court. *Stoll*, 305 U.S. at 172. Here, the Confirmation Order (a prior judgment) specifically provided that the bankruptcy court determined that it had subject matter jurisdiction to confirm the Confirmed Plan under 28 U.S.C. §§ 157, 1334. R. 560. No allegation of fraud, so this Court should not question the bankruptcy court's competent jurisdiction. Therefore, the bankruptcy court's Confirmation Order is a prior judgment by a court of competent jurisdiction.

**3.   Final Judgment on the Merits**

"[A] final judgment for the purposes of res judicata must finally dispose of some matter which under the substantive law to be applied and the procedural law of the forum can be, and has been, finally disposed of." *Charles House*, 742 F.2d at 870 n.10 (5th Cir. 1984) (quoting 1B J. Moore,

*Moore's Federal Practice* ¶ 0.409[1.–1] (2d ed. 1983). Also, the *Shoaf* court explained that "a bankruptcy court's confirmation of a plan that provides for resolution of a matter, even though the matter is not actually litigated, is an order that is final and appealable." 815 F.2d at 1053; *see also In re Blast Energy Services, Inc.*, 396 B.R. 676, 695 (Bankr. S.D. Tex. 2008). This leaves no doubt that the bankruptcy court's confirmation order in this case acts as a final judgment on the merits for purposes of res judicata.

###    **4.**      **Same Cause of Action**

The Fifth Circuit determines whether two different causes of action are actually the same under the Restatement (Second) of Judgments transactional test. *Shoaf*, 815 F.2d at 1053 (citing *Southmark Props.*, 742 F.2d at 869); *see also* Restatement (Second) of Judgments § 24 (1982). Under the transactional test, the only question the Court must consider is whether the cause of action UISD now asserts arose out of the same transaction that was the subject of the original bankruptcy order. *See Shoaf*, 815 F.2d at 1054. The bankruptcy court's confirmation order incorporated the reorganization plan by reference and established the plan as valid, binding, and enforceable. R. 560–62. The incorporation by reference subjects assertions covered by the plan to the original bankruptcy order. Because the plan deals with UISD's ability to collect the disputed fees, as discussed above, the confirmation order's incorporation by reference means any present collection attempts arose from the same transaction and are part of the same cause of action.

In conclusion, UISD's amended proof of claim was binding. Vitro Packaging's tax payment covered the base taxes it owed UISD in full. Section 3.5 discharged UISD's claim for disputed fees. The confirmed plan has res judicata effect and allows for the confirmed plan's discharge of UISD's claim and its underlying statutory lien. All res judicata elements are met and so it applies. Thus,

UISD's claims for base taxes, penalties, interest, and fees are all discharged through payment or the confirmed plan; its underlying statutory lien is discharged by the confirmed plan; the confirmed plan is binding on the parties; and per the plan, UISD is enjoined from further collection attempts.

This result aligns with the bankruptcy court's original enforcement order. Additionally, because the first order appears to be correct, there was no abuse of discretion when the bankruptcy court denied UISD's motion to alter or amend judgment and motion to reconsider.

## IV.

## CONCLUSION

For the reasons discussed herein, the bankruptcy court's orders are **AFFIRMED**. The appeal of the United Independent School District is **DENIED** in its entirety. United Independent School District is **ENJOINED** from further collection attempts for the above listed base taxes, tax penalties, interest, and fees.

SO ORDERED.

DATED: September 23, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE